USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/31/22___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| STEVEN J. MULLIGAN, |
| **Plaintiff,** |
| -against- |
| VERIZON NEW YORK INC. and JAMES MELCHIONE, |
| **Defendants.** |

**17-CV-9390 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Steven Mulligan brings this action against Verizon New York Inc. ("Verizon") and James Melchione for discrimination, failure to accommodate his disability, hostile work environment, and retaliation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). Before the Court are Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND[1]

Plaintiff is employed by Verizon, where he works as a lineman. Defs.' Rule 56.1 Stmt, ECF No. 58 ¶¶ 1–3. From 2008 through 2014, Plaintiff was placed on light duty due to a back

---

[1] The following factual summary consists of undisputed material facts unless otherwise indicated. Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 283–84 (2d Cir. 2005) (citations omitted).

injury. *Id*. ¶ 31. Defendant Melchione began serving as Plaintiff's supervisor in February 2013. *Id*. ¶ 24. On February 3, 2014, Verizon's third-party medical vendor, MetLife, notified Verizon that Plaintiff was eligible for Verizon's Health Impairment Plan ("HIC"). *Id*. ¶ 56. HIC applies to employees with long-term medical restrictions that prevent them from fully performing their jobs and provides such employees 90 days to find a position at Verizon they can manage with their restrictions. *Id*. ¶ 50. Shortly before the HIC period ended, Plaintiff provided medical documentation to MetLife stating he had no work restrictions as of May 14, 2014 and Plaintiff informed Melchione he could now fully perform his job functions. *Id*. ¶ 76. MetLife reviewed Plaintiff's medical documentation to evaluate whether Plaintiff could return to work and MetLife determined that, as concluded by Plaintiff's healthcare provider, Plaintiff could be released for a full return to work. Pl.'s Response to Defs.' Rule 56.1 Stmt ¶¶ 77, 80, ECF No. 74.

However, Melchione reported to Human Resources ("HR") that he was concerned that Plaintiff still struggled to lift, twist, and bend, as required for the lineman position, and could injure himself or a fellow lineman if he did not undergo retraining. Defs.' Rule 56.1 Stmt ¶ 79. Plaintiff therefore took a Functional Capacity Evaluation ("FCE"), which he completed successfully on August 21, 2014. *Id*. ¶¶ 80, 83, 84. Although Plaintiff assumed the full duties of a lineman on August 29, 2014, Melchione continued to express concern that Plaintiff would be unable to safely carry out the job given the significant amount of time he spent away from the position while on light duty. *Id*. ¶¶ 88, 92. Plaintiff became a fully-qualified lineman on August 10, 2016. *Id*. ¶ 103. Defendants contend that Plaintiff received on-the-job training until August 2016 when he was deemed fully-qualified; Plaintiff denies that he received any re-training and instead alleges that he carried out the tasks as per course without any extra instruction or oversight. Pl.'s Response to

Defs.' Rule 56.1 Stmt ¶ 100. Plaintiff 's ability to earn overtime compensation was impacted by his status as a lineman who was not fully-qualifed. Defs.' Rule 56.1 Stmt ¶ 96.

On April 28, 2016, Plaintiff filed an internal complaint alleging disability discrimination and harassment by Melchione. *Id*. ¶ 119. HR investigated the complaint and concluded there was no evidence of harassment or discrimination. *Id*. ¶ 120. On August 12 and August 19, 2016, Plaintiff emailed HR about Melchione bypassing him for overtime. *Id*. ¶ 104. Plaintiff also told HR that Melchione accused him of violating Verizon's smoking policy. *Id*. ¶¶ 123–25.

On September 9, 2016, Plaintiff was suspended and then terminated for violating Verizon's Code of Conduct in an August 26, 2016 incident in which, per Melchione's account, Plaintiff threatened Melchione, although Plaintiff has denied these allegations. *Id*. ¶¶ 146–156. On October 14, 2016, Plaintiff's union negotiated an agreement with Verizon that purported to be in full settlement of Plaintiff's grievances and resulted in Plaintiff returning to his lineman position. *Id*. ¶¶ 160, 162.

## PROCEDURAL HISTORY

On October 7, 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id*. ¶ 165. On September 1, 2017, the EEOC issued a Dismissal and Notice of Rights to Plaintiff. First Am. Compl. ("FAC") ¶ 7, ECF No. 11. Plaintiff initiated this Action on November 30, 2017. Compl., ECF No 1. Plaintiff filed a "First Amended Complaint" on March 9, 2018. Plaintiff brings (1) claims against Verizon for disability discrimination, failure to accommodate, retaliation, and hostile work environment based on a disability, in violation of the ADA; (2) claims against Melchione and Verizon for failure to accommodate, disability discrimination, retaliation, and hostile work environment under the NYSHRL; and (3) a claim of retaliation under Title VII against Verizon.

On May 7, 2021, Defendant moved for summary judgment and Plaintiff moved for partial summary judgment on his Second Cause of Action, which alleges that Melchione and Verizon violated the NYSHRL by failing to provide reasonable accommodations for Plaintiff's disability. ECF Nos. 52, 54.

## STANDARD OF REVIEW

Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.Supp.3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of showing that there [is] no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and citations omitted). Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks and citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Still, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co*., No. 14-cv-7354(JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks and citations omitted). Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. at 1461. (internal quotation marks and citations omitted).

## DISCUSSION

### I.      ADA Failure to Accommodate Claim

Plaintiff's claim that Defendants violated the ADA by failing to accommodate his disability is dismissed as timebarred.

A plaintiff bringing a claim under the ADA must file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a). The claim is properly rejected when a plaintiff fails to do so. *See Troeger v. Ellenville Cent. Sch. Dist*., 523 F. App'x 848, 851 (2d Cir. 2013). Plaintiff admits that he did not require an accommodation as of May 14, 2014, and that his failure to accommodate claim is limited to the period of time between February 2013 and May 2014. Pl.'s Response to Defs.' Rule 56.1 Stmt ¶ 36. Here, Plaintiff filed his complaint with the EEOC in October 2016, and therefore, claims

5

occurring before December 12, 2015 are timebarred. Thus, the failure to accommodate claim under the ADA is dismissed as untimely.

## II.      ADA and NYSHRL Discrimination Claim

Disability discrimination claims are subject to the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden-shifting analysis. As such, "[a] plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a *prima facie* case." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Accordingly, if a plaintiff establishes her *prima facie* case, the employer then "must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 169 (2d Cir. 2006)).

To establish a *prima facie* claim of discrimination under the ADA, a plaintiff must establish "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

The parties do not dispute that Plaintiff satisfies the first two prongs. Plaintiff's claim survives the third prong, as a reasonable jury could find that he was qualified to perform the essential functions of the job once he was medically cleared to fully perform all duties as a lineman in 2014. "[A]n individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." *Shannon v. New York*

6

*City Transit Auth.*, 332 F.3d 95, 99–100 (2d Cir. 2003) (internal quotation marks and citations omitted). In making this determination, "considerable deference" is awarded to "an employer's judgment regarding what functions are essential for service in a particular position." *Id.* at 100 (internal quotation marks and citations omitted). In addition to the undisputed facts that Plaintiff was medically cleared to return to full duty in May 2014 and that MetLife, upon reviewing Plaintiff's medical documentation, determined that he no longer had an open disability claim, in August 2014, Plaintiff successfully completed the FCE, which "ensure[d] Plaintiff was capable of the physically strenuous work of a lineman," and Plaintiff then returned to full duty as a lineman. Defs.' 56.1 Stmt. ¶ 83. Thus, Plaintiff satisfies the third prong.

With respect to the fourth prong, the only adverse actions Plaintiff addresses in his opposition brief are: (1) the deprivation of the opportunity to earn overtime between 2014 and 2016 due to Defendants only deeming Plaintiff a qualified lineman in 2016; (2) the requirement of completing the FCE; (3) and the requirement of sweeping the garage's parking lot. Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Mem.") 4–6. Accordingly, other alleged adverse actions raised by Plaintiff in the FAC are deemed abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Under the 300-day statute of limitations, those adverse acts occurring prior to December 12, 2015 are timebarred. Thus, the adverse acts of requiring Plaintiff to complete the FCE and requiring Plaintiff to sweep the parking lot are timebarred: the FCE occurred on August 21, 2014 and Plaintiff's assignment to sweep the parking lot concluded on August 21, 2014.

"[T]he denial of overtime work can constitute an adverse employment action under the ADA." *Stalter v. Bd. of Co-op. Educ. Servs. of Rockland Cty.*, 235 F. Supp. 2d 323, 330 (S.D.N.Y.

7

2002); *see also Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) (finding that the "allegation that [Plaintiff] was denied opportunities for overtime" constitutes an adverse employment action). Here, Plaintiff establishes his prima facie case for the time period of December 12, 2015 until August 10, 2016, the date he became a fully-qualified lineman. Plaintiff was denied the opportunity to earn overtime due to Defendants' requirement that he complete training before becoming fully qualified as he had not worked as a lineman for a long period of time due to his disability.

Under the next step of the analysis, Defendants have presented legitimate non-discriminatory reasons for this conduct. Namely, safety concerns compelled Defendants to require remedial training due to the lengthy period of time Defendant spent on light duty. *See Burns v. City of Utica*, 590 F. App'x 44, 49 (2d Cir. 2014) ("[T]he fact that [Plaintiff] was required to undergo remedial training after missing so much work was not an adverse action. Rather, requiring such training was a reasonable safety precaution to ensure that [Plaintiff] could perform her duties as a firefighter after being absent from work for several months.").

Plaintiff next must prove that "the employer's reason was merely a pretext for discrimination." *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). Plaintiff need not show "the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision," rather, Plaintiff must only prove that "those were not the only reasons and that plaintiff's protected status contributed to the employer's decision." *Finn v. N.Y. State Office of Mental Health Rockland Psychiatric Ctr.*, No. 08-cv-5142(VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011).

Plaintiff has met his burden by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Taylor v. Family Residences and Essential Enters, Inc.*, No. 03–cv-6122 (DRH), 2008 WL 268801, *8 (E.D.N.Y. 2008)(internal quotation marks and citations omitted). Plaintiff argues that although Defendants claim they had safety concerns and Plaintiff needed training, he never received training in the two-year period between 2014 and 2016 when he was cleared for fully duty and when he was deemed fully qualified. While Defendants admit that Plaintiff did not receive formal training, they contend that he instead received on-the-job training. *See, e.g.*, Wexler Decl. Ex. B at 75, 97, ECF No. 61-2; Wexler Decl. Ex. F at 71, 75, 182, ECF No. 61-6. Plaintiff disputes that he received any on the job training during this period. *See* Pl.'s Response to Defs.' Rule 56.1 Stmt ¶ 100; Decl. of Steven J. Mulligan, ECF No. 73 ¶¶ 17, 28. Thus, Plaintiff has demonstrated that genuine issues of material fact exist as to whether he was discriminated against by Defendants.

Accordingly, Defendants' summary judgment motion as to Plaintiff's discrimination claim under the ADA is denied. As "[t]he analysis under the ADA coincides with the analysis under the NYSHRL" with respect to discrimination claims, the summary judgment motion as to Plaintiff's discrimination claim under the NYSHRL is also denied. *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 367 (S.D.N.Y. 2018).

### III.    Hostile Work Environment

"To establish a hostile work environment . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Gomez v. N.Y.C. Police Dep't*, 191

F.Supp.3d 293, 300–01 (S.D.N.Y 2016) ("Hostile work environment claims under the ADA . . . are evaluated under the same standards as hostile work environment claims under Title VII . . . ." (internal quotation marks and citations omitted)). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks and citations omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*. (internal quotation marks and citations omitted).

The conduct that Plaintiff alleges contributed to a hostile work environment and which is not barred by the statute of limitations consists of (1) Verizon not deeming Plaintiff fully-qualified until 2016; (2) Melchione bypassing Plaintiff for overtime opportunities on three occasions in August 2016; (3) Melchione accusing Plaintiff of smoking inside a company vehicle on one occasion; (4) Melchione accusing Plaintiff of threatening Melchione on one occasion; and (5) Verizon staff's misuse of handicapped parking spaces. Pl.'s Mem. 14–15. These allegations are neither sufficiently severe nor pervasive as to warrant a hostile discrimination claim. Thus, summary judgment on Plaintiff's hostile work environment claim under the ADA is granted.

## IV.   ADA and NYSHRL Retaliation Claim

"The *McDonnell Douglas* burden shifting analysis also applies to retaliation claims brought pursuant to the ADA." *Rios v. Dep't of Educ.*, 351 F. App'x. 503, 505 (2d Cir. 2009). Accordingly, Plaintiff first must satisfy the elements of the *prima facie* case of retaliation. "To establish a *prima facie* case of retaliation under the ADA, a plaintiff is required to show by a preponderance of the evidence that: (1) the plaintiff participated in a protected activity under the ADA; (2) the defendant

knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." *Id.*

A "causal connection" can be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff references as protected activities his April 28, 2016 complaint to Verizon concerning Melchione's alleged disability discrimination against him and his August 19, 2016 email to Human Resources regarding Melchione's actions bypassing Plaintiff for overtime and falsely accusing Plaintiff of violating Verizon's smoking policy. Pl.'s Mem. 17–18. However, Plaintiff's argument only relies on the August 2016 conduct as the relevant protected activity. Plaintiff points to two events as adverse employment actions. He alleges Melchione's August 2016 complaint regarding Plaintiff's allegedly threatening behavior, which resulted in Plaintiff's temporary termination. He also alleges Verizon's communication with Plaintiff's union representative after Plaintiff filed his EEOC charge. In this communication, Verizon told the representative that it had believed that its negotiated agreement with Plaintiff was in full satisfaction of Plaintiff's grievance. Subsequent to this communication, the representative asked Plaintiff to withdraw his charge as the representative believed that otherwise his negotiation credibility with Verizon would be harmed .

"An adverse employment action in the retaliation context is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018) (internal

quotation marks and citations omitted). Both of the alleged adverse employment actions meet this bar. Further, these actions occurred shortly after the protected activity of Plaintiff communicating with HR in August 2016 such that the causation element is met.

Defendants offer non-discriminatory reasons for both actions. With respect to Melchione's complaint, Defendants argue that Melchione's complaint and Plaintiff's subsequent termination resulted from Plaintiff's violation of Verizon's Code of Conduct, and Verizon's internal investigation substantiated that Plaintiff had indeed violated the Code of Conduct. With respect to Verizon's comments to the union representative, Defendants appear to argue that the agreement between Plaintiff and Verizon was explicitly in full settlement of Plaintiff's grievance. Therefore, Verizon was surprised that Plaintiff filed an EEOC complaint and accordingly contacted the union representative to inform him that the issue was seemingly not fully resolved.

With respect to pretext, although "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010).

As evidence of pretext, Plaintiff points to Melchione's inconsistent explanations of Plaintiff's threatening behavior. Specifically Melchione's recitation of the curses Plaintiff employed differed in Melchione's deposition and in the written statement Melchione prepared after the incident. "[W]eaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" can serve as evidence that "the explanations were a pretext for a prohibited reason." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). However, the inconsistencies in Melchione's description of Plaintiff's threatening behavior are slight and are merely "variations . . . on the same theme rather

than separate inconsistent justifications," and thus insufficient to establish pretext. *Roge v. NYP Holdings, Inc*. 257 F.3d 164, 170 (2d Cir. 2001).

Second, Plaintiff argues that the record demonstrates that Verizon was concerned that Melchione was in fact retaliating against Plaintiff, thus supporting a conclusion that Defendants' proffered reasons are pretextual. Indeed, there is ample evidence that Verizon expressed concern that Melchione's actions against Plaintiff were motivated by retaliatory intent. *See* Pl.'s Response to Defs.' Rule 56.1 Stmt ¶¶ 315–17, 322–25. This evidence is sufficient to raise a triable issue of fact as to whether Plaintiff was terminated due to retaliation.

Plaintiff offers no evidence of pretext to rebut Verizon's justification for the union representative's cautions to Plaintiff, and therefore this claim fails.

Accordingly, Defendants' summary judgment motion as to the claims of retaliation under the ADA is denied. As the analysis is the same for retaliation claims under the ADA and the NYSHRL, the summary judgment motion as to the claims of retaliation under the NYSHRL is also denied. *See Thomson v. Odyssey House,* No. 14-cv-3857 (MKB,) 2015 WL 5561209, at \*19 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).

## V.     Retaliation under Title VII

Plaintiff's Title VII retaliation claim fails as Title VII does not apply to disability claims. *See Acheampong v. New York City Health & Hosps. Corp*., No. 11-cv-9205 (LTS) (SN), 2015 WL 1333242, at \*10 n.11 (S.D.N.Y. Mar. 25, 2015) ("Because disability discrimination claims are not cognizable under Title VII or the ADEA, Plaintiff's claims pursuant to those statutes will be dismissed in their entirety.").

Accordingly, Plaintiff's Title VII claim is dismissed.

## VI.    Remaining NYSHRL Claims

Although federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), this jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also* 28 U.S.C. § 1367(c)(3) (stating that a court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). Thus, the Court declines to exercise supplemental jurisdiction over the state law claims that do not correspond to those federal claims the Court has not dismisses, and the Court dismisses those state claims without prejudice.

## CONCLUSION

For the reasons above, the Court DENIES Plaintiff's motion for partial summary judgment and DENIES in part and GRANTS in part Defendants' summary judgment motion. The Court DENIES Defendants' summary judgment motion as to (1) Plaintiff's retaliation claim under the ADA and the NYSHRL as it relates to Melchione's August 2016 complaint against Defendant and Plaintiff's termination and (2) Plaintiff's discrimination claim under the ADA and the NYSHRL as it relates to Plaintiff's deprivation of overtime from December 12, 2015 until August 10, 2016. Otherwise, Defendant's summary judgment motion is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions pending at ECF No. 52 and 54.

14

SO ORDERED.
Dated: March 31, 2022
     New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**